NOTICE
Decision filed 07/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 200296-U

NO. 5-20-0296

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 08-CF-877 |
| | ) | |
| LOGAN DYJAK, | ) | Honorable |
| | ) | John J. O'Gara, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court did not err in dismissing the defendant's petition for conditional release where the circuit court's determination was not against the manifest weight of the evidence.

¶ 2     On November 20, 2012, the defendant, Logan Dyjak, was found not guilty of first degree murder by reason of insanity (NGRI). The circuit court entered a stipulated order finding that he was subject to involuntary admission and in need of continued mental health services. As such, the defendant was remanded to the custody of the Illinois Department of Human Services (DHS) for treatment. On April 5, 2017, the defendant filed a *pro se* petition for conditional release, which the circuit court denied on September 10, 2020. The defendant now appeals, *pro se*, the order of the circuit court denying his petition for conditional release. For the following reasons, we affirm the judgment of the circuit court.

1

¶ 3                                    I. BACKGROUND

¶ 4     On June 28, 2008, the defendant was charged with first degree murder in violation of section 9-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1) (West 2008)). The information alleged that on June 26, 2008, the defendant strangled Judith Bauer, his grandmother, with his hands around her neck, causing her death. At the time of his arrest, the defendant stated to law enforcement that he believed that his grandmother and sister were threatening harm to his four-year-old niece and his cousins. The defendant was later indicted by a grand jury for the charge of first degree murder.

¶ 5                                    A. Pretrial

¶ 6     On September 2, 2008, defense counsel expressed a *bona fide* doubt about the defendant's fitness and the circuit court ordered a psychological evaluation of the defendant regarding his fitness to stand trial. Clinical psychologist Dr. Daniel Cuneo first evaluated the defendant on September 12, 2008. In his report to the circuit court, Dr. Cuneo opined that the defendant could best be diagnosed with schizoaffective disorder, and that, at that time, his mental illness did not substantially impair his ability to understand the proceedings against him or to assist in his own defense. On October 27, 2008, a jury found the defendant fit to stand trial.

¶ 7     The defendant refused all psychotropic medications while in jail, and his mental condition deteriorated. The circuit court requested further evaluation, and Dr. Cuneo tendered a second report to the circuit court on May 1, 2009. In his second report, Dr. Cuneo gave the opinion that the defendant had lapsed into acute psychosis, and that his mental illness now substantially impaired his ability to understand the nature and purpose of the proceedings against him and his ability to assist in his own defense. On May 5, 2009, the defendant was found unfit to stand trial, and the circuit court remanded him to the custody of DHS for treatment.

¶ 8      The defendant was subsequently transferred to the Alton Mental Health Center for treatment, where he continued to refuse psychotropic medication until required to take such medication pursuant to court order. On March 29, 2010, his treatment team reported to the circuit court that the defendant had been restored to fitness. The defendant was adjudicated fit to stand trial on April 6, 2010, and remanded back to jail.

¶ 9      Dr. Cuneo conducted another court-ordered evaluation of the defendant on June 28, 2010. In his report, he noted that the defendant had refused all psychotropic medication since returning to jail. Dr. Cuneo opined that the defendant committed the alleged offense while suffering from schizoaffective disorder, which rendered him unable to appreciate the criminality of his conduct. Dr. Cuneo further wrote that the defendant was acutely psychotic at the time of the murder, that he was acting upon paranoid and religious delusions, and that his insight and judgment were grossly impaired. Therefore, Dr. Cuneo concluded that the defendant was legally insane at the time of the alleged offense.

¶ 10     On August 3, 2010, psychiatrist Dr. John Rabun conducted a court-ordered evaluation of the defendant and filed his report to the circuit court on September 3, 2010. He opined that the defendant had schizoaffective disorder, that he had acted on the irrational belief of his delusions at the time he committed the offense, and that he lacked substantial capacity to appreciate the criminality of his actions. Dr. Rabun's report also supported the conclusion that the defendant was legally insane at the time of the charged offense.

¶ 11     The defendant filed a motion requesting a jury instruction on the charge of second degree murder on March 31, 2011. The motion argued that the jury instruction would be appropriate given that the defendant believed that his actions were necessary to prevent the commission of a forcible

3

felony, *i.e.*, that the defendant believed that his actions were necessary to prevent his niece and cousins from being raped and killed. The circuit court denied his motion on April 21, 2011.

¶ 12                                    B. Trial and Commitment

¶ 13    The matter proceeded to a stipulated bench trial on November 20, 2012. The evidence stipulated by the parties included the June and September reports of Dr. Cuneo and Dr. Rabun, respectively. The circuit court found the defendant not guilty of first degree murder by reason of insanity and remanded him to the custody of DHS for an inpatient evaluation to determine whether he was subject to involuntary admission or in need of mental health services pursuant to section 5-2-4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-2-4(a) (West 2010)).

¶ 14    On August 9, 2013, the circuit court found that the defendant was in need of involuntary admission and in need of continued mental health services in a secure inpatient setting. The circuit court went on to determine the defendant's maximum period of confinement ("*Thiem* date").[1] The circuit court set a *Thiem* date of 60 years, based on the sentencing range for first degree murder, with credit for time spent in custody since June 26, 2008. See 730 ILCS 5/5-2-4(b) (West 2012). The defendant was remanded to the custody of DHS. The defendant remained at the Alton facility until February 2018, when he was transferred on an emergency basis to a maximum-security hospital due to reportedly targeting and threatening vulnerable peers at Alton. In August 2018, the defendant was transferred to McFarland Mental Health Center, where he remains to date.

¶ 15                                    C. Defendant's Petition

¶ 16    On March 14, 2018, the defendant filed a *pro se* petition for transfer to a non-secure setting and/or court-ordered privileges pursuant to section 5-2-4(e) of the Code (*id.* § 5-2-4(e)). The

---

[1]The maximum length of commitment for a defendant who has been found NGRI is commonly known as the defendant's *Thiem* date. *Williams v. Staples*, 208 Ill. 2d 480, 483-84 (2004) (citing *People v. Thiem*, 82 Ill. App. 3d 956 (1980)).

defendant sought a determination on whether he "may be transferred to a non-secure setting and/or granted unsupervised grounds privileges and/or escorted off-grounds privileges." On June 11, 2018, the circuit court appointed Dr. Cuneo to conduct an examination.

¶ 17    The matter was continued several times while the parties awaited Dr. Cuneo's evaluation and report. Dr. Cuneo finally evaluated the defendant and tendered his report on March 14, 2019. In addition to his most recent examination, Dr. Cuneo relied on his three previous evaluations of the defendant, police reports and statements, the defendant's clinical files, and statements of the clinical treatment staff in preparing his report. In his report, Dr. Cuneo described the defendant's long history of refusing treatment with psychotropic medication, of experiencing auditory and visual hallucinations, and severe mood swings. He diagnosed the defendant with schizoaffective disorder and an unspecified personality disorder. He further explained that the defendant was refusing all psychotropic medication; was picking and choosing which treatments he would attend; had impaired judgment; had no insight into his mental illness or his past actions relating to the offense; and, continued to justify his behavior while taking little responsibility for his actions. Dr. Cuneo opined that, given the defendant's lack of plans if he were to be discharged or conditionally released, as well as his intent to continue refusing treatment, he would deteriorate even further and the likelihood of him acting out in the future would greatly increase. Therefore, Dr. Cuneo concluded that the defendant "would not be an appropriate candidate for discharge, conditional release, or transfer to a non-secure environment."

¶ 18    On September 13, 2019, the defendant filed an amended *pro se* petition pursuant to section 5-2-4(e) of the Code (*id.*). In the amended petition, the defendant stated that he had previously filed a petition, and that he was amending that petition "specifically for a finding that the defendant is not in need of services on an in-patient basis." The amended petition did not reference or make

5

any mention of his previously requested relief. The defendant also filed a motion advising the circuit court that he was waiving his right to counsel and would be proceeding *pro se*,[2] a motion for discovery, a motion to transfer the proceedings to Sangamon County, and a motion for a *Boose*[3] hearing.

¶ 19    On September 17, 2019, the defendant's treating psychiatrist, Dr. Stacey Horstman, and clinical director, Jo-An Lynn, filed a 90-day treatment progress report, in which they opined that the defendant remained in need of mental health services on an inpatient basis. See 730 ILCS 5/5-2-4(b) (West 2018). The report provided similar information to Dr. Cuneo's evaluation, stating that while the defendant had not recently demonstrated signs of acute psychosis, he still displayed schizoaffective symptoms, had been refusing psychotropic medication for over five years, and occasionally exhibited violent behavior due to poor compliance with treatment. The report also stated that the defendant had very limited insight and judgment regarding his mental illness and the potential benefits of treatment, including consistently denying that he has a mental illness and dismissing clinicians' assessments and recommendations.

¶ 20    The report further stated that the defendant did not have a feasible plan for reintegration into the community or attending follow-up treatment, that he had been aggressive to others on at least two occasions due to his untreated mental illness, and that it was reasonable to expect that he would continue to "inflict serious harm on himself or others if released to the community." The report concluded that his treatment team did not support the defendant's petition for conditional release.

---

[2]The defendant had been represented by counsel prior to this motion.

[3]*People v. Boose*, 66 Ill. 2d 261 (1977), relates to the ability of the circuit court to place a defendant in physical restraint in while appearing in court.

6

¶ 21	The circuit court held an initial hearing on the defendant's amended petition and pending motions on October 1, 2019. The circuit court exhaustively addressed the defendant's request to waive counsel and proceed *pro se*. The circuit court confirmed that the defendant understood the ramifications of representing himself, and then granted his motion to proceed *pro se*. See 405 ILCS 5/3-805 (West 2018). The circuit court went on to address the defendant's motion for a *Boose* hearing and found that his request for a *Boose* hearing was moot because the defendant was not shackled. The defendant argued that it would be "in the public interests" to hear the motion, and that he had been "subjected to it before." The circuit court denied the defendant's motion, but stated that it would conduct a *Boose* hearing if the defendant was shackled in the future.

¶ 22	The State then requested a 30-day continuance in order to respond to the recent filings of the defendant, including the amended petition. Over the defendant's objection, the circuit court granted the State 30 days to respond to the defendant's pleadings, and set a hearing date of November 5, 2019.

¶ 23	At the November 5, 2019, hearing, the circuit court again noted that the defendant's motion for a *Boose* hearing was moot because he was not shackled. The circuit court then heard arguments on the defendant's motion to transfer the proceedings to Sangamon County. The defendant contended that the transfer was necessary to accommodate the defendant's material witness, Alicia Rievers, who was indigent and unable to afford transportation to the circuit court in St. Clair County. The circuit court informed the defendant that Rievers would be entitled to a witness fee and mileage reimbursement for her appearance and denied the motion to transfer.

¶ 24	The State then raised the issue that the defendant had improperly served a subpoena on another witness, Dr. Robert Olt, a clinical psychologist and one of the defendant's prior treating physicians. The circuit court stated that an improperly served subpoena was subject to a motion to

7

quash, and reiterated to the defendant that, in choosing to represent himself, he was held to the same standard as an attorney, which the defendant acknowledged that he understood. The circuit court set the matter for hearing on the defendant's amended petition on December 19, 2019.

¶ 25 At the beginning of the hearing on December 19, 2019, the defendant renewed his objection to the circuit court continuing the hearing from October 1, 2019. The defendant argued that the continuance violated the requirement of section 5-2-4(e) of the Code that required a hearing on a petition for conditional release to be held within 120 days. See 730 ILCS 5/5-2-4(e) (West 2018). The defendant also argued that the 30-day continuance granted at the October 1, 2019, hearing violated section 3-800 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3-800 (West 2018)), because the defendant had not consented to a continuance of over 15 days. The defendant claimed that he was prepared to proceed with testimony from his expert witness at the October hearing, but that due to the continuance, he was now unable to have his expert witness present to testify, thus prejudicing him at the hearing.

¶ 26 The State responded that the continuances were made at the request of the defendant's then-counsel, because counsel had requested an independent examination of the defendant. The State further argued that the matter was continued by agreement because the defendant filed multiple motions supported by voluminous exhibits, and additional time was necessary for the State to respond to the defendant's motions. The State further noted that the statute did not require that the circuit court grant the defendant's petition if it is not heard within 120 days. The circuit court then overruled the defendant's objection.

¶ 27 The defendant then proceeded with his second objection regarding the circuit court's prior statements that his motion for a *Boose* hearing was moot. He objected to the circuit court's finding of mootness and the circuit court overruled this objection. The defendant raised his third objection

that the proceedings were not transferred to Sangamon County. The circuit court asked if the defendant was seeking reconsideration of his motion to transfer, to which the defendant said "no." The defendant explained that, while the witness at issue in his motion was present in court, he felt that the steps he had to go through to have her appear were unreasonable. The circuit court overruled this objection as well. Finally, the defendant objected to the circuit court's failure to consider the subpoena of Dr. Olt at the October 1, 2019, hearing. The circuit court stated that the issue had been previously addressed, and to the extent that the defendant was asking the circuit court to reconsider, that motion was denied.

¶ 28 The defendant then called Alicia Rievers, a former mental health patient that had resided in the same unit as the defendant. The defendant also called Madiline Bauer, his mother, who participated in his monthly treatment plan reviews. At this point, we note that we have thoroughly reviewed the report of proceedings, and the testimonies of all witnesses called on behalf of the defendant and the State. In the interest of brevity, however, we will not summarize the testimony of the witnesses. If any specific portion of a witness's testimony is relevant to an issue raised on appeal, we will include a summary of such testimony in our analysis below.

¶ 29 Upon completion of Bauer's testimony, the circuit court addressed the defendant's requests to subpoena numerous witnesses whose addresses the defendant was unable to obtain. The circuit court provided the defendant an address he could utilize to issue subpoenas for witnesses who were DHS employees and noted that the county would reimburse their travel expenses. The circuit court also explained to the defendant that it would not instruct him on how to properly subpoena witnesses, but that it would appoint the defendant counsel. The defendant declined the appointment of counsel. The circuit court set the matter for a continued hearing date of January 9, 2020, and the defendant objected stating that the basis for his objection was the circuit court's refusal to allow

9

him to acquire additional witnesses. The circuit court reiterated that the defendant was responsible for serving and procuring the appearance of any additional witnesses for the January 9, 2020, hearing date.

¶ 30    On January 6, 2020, the defendant filed a motion titled "*Pro Se* Motion for Reconsideration of Illinois Rules of Evidence 405, 608, and 803(4); Pursuant United States Constitutional Amendments 6 and 14." In this motion, the defendant contested the circuit court's sustaining the State's objections to various questions the defendant had asked during Rievers's and Bauer's testimonies. The defendant argued that he should have been allowed to question his witnesses regarding the "character for truthfulness or untruthfulness" of his treatment providers since those providers had been identified as witnesses for the State.

¶ 31    The circuit court addressed the defendant's motion at the January 9, 2020, hearing. After hearing arguments from both sides, the circuit court denied the defendant's motion for reconsideration. The defendant then informed the circuit court that he had attempted to subpoena several witnesses, but that the 21-day continuance was insufficient time to accomplish service. He requested an additional eight weeks to effectuate service but stated that he had no objection to the State proceeding with the examination of its two witnesses who were prepared to testify that day. The State asked that the defendant present all of his evidence and rest his case before the State proceeded with its evidence, and the circuit court agreed. Without objection from the State, the circuit court granted the defendant's requested continuance and set a new hearing date of March 12, 2020.

¶ 32    The defendant then perfected service of several subpoenas, including a subpoena *duces tecum* seeking the emails of Dr. Horstman, one of the defendant's DHS providers. DHS motioned to quash the subpoena *duces tecum*, and at the March 12, 2020, hearing, the circuit court

denied DHS's motion. The circuit court directed DHS to comply with the subpoena within 30 days. The defendant indicated that he wanted to review the emails before questioning Dr. Horstman, and that an additional witness would also prefer a different court date. The defendant agreed to have one of the State's witnesses testify at a later date, but to proceed with three witnesses at the current hearing. The circuit court indicated that the hearing would proceed with the agreed-upon witnesses and then be continued, at the defendant's request, for at least 50 days.

¶ 33    The defendant then called Dr. Robert Olt, a retired clinical psychologist who had previously treated the defendant. The defendant also called Dr. Zhihong Zhang, a psychiatrist who treated the defendant from November 2018 to March 2019, and Janelle Burner, a social worker at the defendant's current mental health facility. Upon completion of Burner's testimony, the circuit court concluded the hearing and set a continuation date of April 30, 2020. The April 30, 2020, hearing date was later reset to July 9, 2020, due to COVID-19 courthouse closures.

¶ 34    At the July 9, 2020, hearing, the defendant called Sarah Topal, a social worker who worked at one of the defendant's previous mental health facilities in 2016. The defendant also called Dr. Stacey Horstman, one of the defendant's DHS providers; Jo-An Lynn, a social worker and the clinical director at the defendant's mental health facility; and Dr. Cuneo, a clinical psychologist who, as noted above, performed several evaluations of the defendant.

¶ 35    At the conclusion of the defendant's case, the State informed the circuit court that it had no witnesses and then moved for a directed verdict. The defendant objected to a directed verdict, and the circuit court continued the matter until August 27, 2020, taking the State's motion under advisement.

¶ 36    At the August 27, 2020, hearing, the defendant argued in his closing statement that the circuit court should not consider the opinions of Dr. Cuneo and Dr. Horstman.[4] The defendant argued that Dr. Cuneo was not able to testify to the defendant's mental state because Dr. Cuneo had not evaluated him since March 2019, so the basis for his opinion was not "fresh." He also claimed that Dr. Cuneo could not give an expert opinion because his statements were based on a "blanket policy"[5] against "individuals who have been acquitted of serious crimes who did not take medication" rather than a "professional" opinion. The defendant additionally argued that Dr. Cuneo based his opinion on irrelevant factors, such as the fact that the defendant had committed a crime in "the distant past," the defendant's not being allowed privileges in the hospital, and his treatment team's lack of support for his conditional release.

¶ 37    The defendant also argued that Dr. Horstman's opinion should be disregarded because she admitted to changing the defendant's diagnosis without a new evaluation, and her diagnosis of partial remission was not based on sufficient evidence. He further claimed that her opinion could only be regarded as a lay, not expert, opinion because she did not conduct a new evaluation of the defendant before authoring the September 2019 report. He further argued that, like Dr. Cuneo, Dr. Horstman based her opinion on irrelevant factors and also cited examples that allegedly showed that Dr. Horstman's testimony was contradicted by other evidence.

¶ 38    The defendant argued that he did not have a severe mental illness and was not dangerous, referencing testimony and/or reports from Lynn; Dr. Olt; Dr. Zhang; Bruner; and, Bauer that he claimed showed, *inter alia*, that he does not exhibit any symptoms, did not present any danger,

---

[4]On appeal, he includes Lynn in the testimonies he alleges are based on hearsay and should not be considered expert opinions.

[5]The defendant also gave other examples of what he claimed were irrelevant "blanket policies" that other witnesses relied upon in their testimony.

12

attended all treatment meetings, and was not in need of medication. The defendant also claimed that Topal, Lynn, Dr. Horstman, and Dr. Cuneo's testimonies were inadmissible because they took place at a continued hearing "which did not comport with due process" because the defendant objected to the continuance and only participated in the later hearings to raise his argument of inadmissibility. The defendant additionally argued that Lynn testified that he did not cooperate with the treatment team based on his actions of petitioning for release and assisting others in petitioning the circuit court, which he described as his exercise of his first and fourteenth amendment rights.

¶ 39 The defendant further argued that none of the reports establish that he ever experienced a delusion, hallucination, or mood symptoms, and that the reports were inconsistent with the treatment plans prepared by his treatment team. He further claimed that his actions related to the murder were irrelevant to his petition because he was "exculpated and completely absolved" of those actions.

¶ 40 The circuit court took that matter under advisement and issued its written order on September 10, 2020. The circuit court found that, not only had the defendant failed to meet his burden of proving that he was no longer in need of mental health services on an inpatient basis, but the evidence showed the contrary. The circuit court concluded that, based on the evidence that the defendant elicited from Dr. Cuneo, Dr. Horstman, and Lynn, the defendant remained mentally ill and required inpatient hospitalization in a secure setting due to the risk of serious physical harm to himself or others. As such, the circuit court denied the defendant's petition for conditional release.

¶ 41 The defendant now appeals the circuit court's September 10, 2020, denial of his petition for conditional release. The circuit court appointed the Office of the State Appellate Defender

(OSAD) to represent the defendant. OSAD moved to withdraw, as the underlying proceeding involved an acquittal by reason of insanity, which was beyond the scope of OSAD's authority. This court granted the motion and remanded the matter to the circuit court for the limited purpose of appointing substitute counsel. The circuit court subsequently appointed substitute appellate counsel. The defendant then filed a motion to proceed *pro se* on appeal, which this court granted.

¶ 42                                II. ANALYSIS

¶ 43    Before proceeding with our analysis, we need to address the defendant's motion to strike filed in this court on March 10, 2023. The defendant's motion alleges that the appellee's brief fails to comply with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), because the appellee's brief "inappropriately references and cites to pages of document which are not included in the record on appeal." Specifically, the defendant argues that the appellee's brief includes reference to a "CI" record and that the record on appeal does not contain a "supplemental record or anything filed under seal." As such, pursuant to Illinois Supreme Court Rule 375(a) (eff. Feb. 1, 1994), the defendant requests that this court strike those portions of the appellee's brief that references a "CI" record.

¶ 44    The defendant's motion is without merit. As the appellee noted in its response, filed on March 13, 2023, the "CI" citations are to the impounded record that is part of the record on appeal. Where a brief fails to comply with the rules, this court has the inherent authority and discretion to strike the brief, in whole or in part. Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994); see *In re Marriage of Iqbal*, 2014 IL App (2d) 131306, ¶ 14. Here, we find no indication that the appellee failed to comply with the rules regarding citations to the record on appeal, and accordingly, we deny the defendant's motion to strike. We will now proceed with our analysis of the issues.

14

¶ 45    On appeal, the defendant raises the following five issues for this court's consideration: (1) that he is entitled to release because his *Thiem* date was miscalculated, and the circuit court failed to conduct a timely hearing on his petition; (2) that the circuit court erred in failing to make a ruling regarding his petition for privileges in its order denying conditional release; (3) that the circuit court abused its discretion by failing to rule on the use of restraints; (4) that the defendant was prejudiced because the State and the circuit court obstructed witnesses' testimony, obstructed the appearance of a material witness, and improperly admitted hearsay testimony; and, (5) that section 5-2-4 of the Code (730 ILCS 5/5-2-4 (West 2020)) is unconstitutional. The defendant further argues that the State failed to meet its burden and as such, the circuit court's denial of his petition for conditional release was against the manifest weight of the evidence.

¶ 46    Section 5-2-4 of the Code governs proceedings after an acquittal by reason of insanity, and "promulgates standards for involuntarily committing insanity acquittees, for computing the length of commitment, and for granting a conditional release or discharge." *People v. Jurisec*, 199 Ill. 2d 108, 116 (2002); see 730 ILCS 5/5-2-4 (West 2020). After it is determined that a defendant needs mental health services on an inpatient basis, the review proceedings, including review of treatment and treatment plans, and discharge of the defendant after such order shall be under the Mental Health Code (405 ILCS 5/3-800 *et seq.* (West 2020)). 730 ILCS 5/5-2-4(b) (West 2020).

¶ 47    Prior to 2000, the Code placed the burden of proof on the State. *People v. Bryson*, 2018 IL App (4th) 170771, ¶ 41. After 2000, however, the burden shifted to the defendant to prove by clear and convincing evidence that he "is not reasonably expected to inflict serious harm upon defendant's self or another and would not benefit from further inpatient care or be in need of such inpatient care." *Id.* The statute provides a nonexhaustive list of factors that the circuit court may consider in determining whether a defendant has met his burden of proof, including the current

15

state of his mental illness and what, if any, medications the defendant is taking. 730 ILCS 5/5-2-4(g) (West 2020).

¶ 48    "The trial court's determination as to whether a defendant has carried his burden under section 5-2-4(g) by clear and convincing evidence must be respected unless such determination is against the manifest weight of the evidence." *People v. Wolst*, 347 Ill. App. 3d 782, 790 (2004). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 49                                      A. *Thiem* Date

¶ 50    Subsection 5-2-4(b) of the Code provides, in relevant part, that the maximum time of the involuntary commitment cannot exceed the "maximum length of time that the defendant would have been required to serve, less credit for good behavior ***, before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." 730 ILCS 5/5-2-4(b) (West 2020). The defendant argues that the circuit court erred in calculating his *Thiem* date based on a sentence for first degree murder where the defendant committed second degree murder.

¶ 51    The defendant argues that his actions met the definition of second degree murder because he committed the offense of first degree murder with the mitigating factor that he was acting under the unreasonable belief that the circumstances justified the killing. See 720 ILCS 5/9-2(a)(2) (West 2008). He claims that his *Thiem* date should have been 10 years, which he calculates as the 20-year maximum sentence for second degree murder, plus day-for-day credit for good conduct. See 730 ILCS 5/3-6-3(a)(2.1) (West 2008). Therefore, he concludes that his *Thiem* date expired in 2018.

¶ 52   The defendant is mistaken regarding the applicability of second degree murder. The second degree murder statute does not apply in circumstances where a mental disorder causes the defendant to overreact to a non-physical threat. *People v. McDonald*, 329 Ill. App. 3d 938, 951 (2002). Here, the evidence established that the defendant had the unfounded belief that the lives of his niece and cousins were in danger and it was the defendant's mental disorder that caused that belief and caused him to overreact to that non-physical threat. Therefore, the defendant was not entitled to the mitigating factor of the second degree murder statute, and we find that the circuit court properly calculated the defendant's *Thiem* date based on first degree murder.

¶ 53   Under this issue, the defendant also argues that he is entitled to release since the circuit court failed to conduct a hearing on his petition within 120 days as required by section 5-2-4(e) of the Code. 730 ILCS 5/5-2-4(e) (West 2020). The defendant states that he filed his original petition on March 14, 2018, and that the circuit court did not conclude its hearing until September 10, 2020. The defendant argues that he was prejudiced by the circuit court's delay because the result would have been different had the hearing been conducted earlier, and that reversal is required where the failure to strictly comply with the statutory requirements is unreasonable and prejudicial.

¶ 54   Section 5-2-4(e) states that upon receipt of a petition for conditional release, the circuit court shall set a hearing within 120 days. *Id.* Where the alleged delay can be attributed to the defendant, he cannot establish that the delay occurred in error. *People v. Daniels*, 2015 IL App (2d) 130517, ¶¶ 20-21. The record reflects that the delays pertaining to the defendant's petition were properly attributed to the defendant. The matter had to be continued for Dr. Cuneo to conduct the independent psychological evaluation as requested by the defendant and other continuances came at the request of defense counsel. The defendant also subpoenaed several witnesses and caused further delay by failing to properly serve them. We note that the delay of the April 30,

17

2020, hearing to July 9, 2020, was not due to the defendant, but was caused by the COVID-19 closures. That delay cannot be accountable to either party since the delay was a result of emergency orders that were adopted pursuant to our supreme court's general administrative and supervisory authority over all state courts. See generally *People v. Mayfield*, 2023 IL 128092, ¶¶ 39-40.

¶ 55    We further note that section 5-2-4(e) states that, "the Court shall set a hearing to be held within 120 days." 730 ILCS 5/5-2-4(e) (West 2018). It does not state that any such hearing is required to be completed within 120 days. Therefore, we find the delay from the filing of the initial petition on March 14, 2018, to the initial hearing on the defendant's petition on October 1, 2019, attributable to the defendant. As such, we find no error in the timing of the circuit court's hearing on the defendant's amended petition.

¶ 56                              B. Request for Privileges

¶ 57    The defendant next argues that the circuit court failed to make a ruling on his March 14, 2018, petition for privileges in its September 10, 2020, order denying conditional release. The defendant again raises his contention that there was an unreasonable delay past the 120-day statutory timeline for a hearing on his petition. He argues that, because the circuit court denied him his due process right to a determination on his petition, he is entitled to the privileges sought in his original petition. The defendant claims that he had demonstrated, by clear and convincing evidence, that he was entitled to those privileges, and that the circuit court violated his due process rights and deprived him of his liberty interest by failing to rule on his petition for privileges as required by section 5-2-4(e) of the Code (730 ILCS 5/5-2-4(e) (West 2020)).

¶ 58    The defendant's initial *pro se* petition filed on March 14, 2018, sought "transfer to a non-secure setting and/or court ordered privileges." The privileges requested in the petition were "unsupervised grounds privileges and/or escorted off-grounds privileges." The defendant's

18

September 13, 2019, amended petition, however, did not request any of these privileges and instead, requested a finding that he was not in need of services on an inpatient basis, and an order for the State to establish a discharge plan.

¶ 59    When a party files an amended pleading that "is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." *Bowman v. Lake County*, 29 Ill. 2d 268, 272 (1963). Arguments from the former pleading that are not incorporated in the amended version are deemed waived. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 18. The party further forfeits appellate review of such abandoned pleadings. *Wade v. Stewart Title Guaranty Co.*, 2017 IL App (1st) 161765, ¶ 70; *Barnett v. Zion Park District*, 171 Ill. 2d 378, 384 (1996).

¶ 60    The defendant's amended petition neither included the previously sought privileges nor referenced the March 14, 2018, privileges requests in any manner. Furthermore, at the hearing on his petition, the defendant informed the circuit court that his petition was for conditional release, and he did not request a ruling regarding privileges. Therefore, we find that the defendant has forfeited this issue by failing to include a request for privileges in his amended petition and for failing to raise the issue before the circuit court.

¶ 61                    C. *Boose* Hearing

¶ 62    The defendant's third argument on appeal is whether the circuit court abused its discretion by failing to rule on the use of restraints. The defendant claims that he was deprived of the opportunity to be heard on why he should not be in restraints in violation of his right to due process. The defendant references various instances in which he attempted to motion for a finding that restraints were unnecessary, but the circuit court refused to rule on his requests.

19

¶ 63    At the October 1, 2019, hearing on the defendant's amended petition and various other motions, including a motion for a *Boose* hearing, the circuit court noted that the defendant was not wearing restraints, and the issue was therefore moot. The defendant argued that it would be "in the public interests" to have the hearing, to which the circuit court replied that a *Boose* hearing could be conducted in the future, if DHS ever considered shackling him. The defendant again raised the issue at the November 5, 2019, December 19, 2019, and July 9, 2020, hearings, and the circuit court similarly ruled that the issue was moot because the defendant was not in restraints.

¶ 64    In *People v. Boose*, our supreme court held that a defendant should not be subject to physical restraint in court unless the circuit court finds such restraint manifestly necessary. *Boose*, 66 Ill. 2d 261, 265-66 (1977). The circuit court has discretion in determining whether and how to restrain a defendant, and this determination is made at a *Boose* hearing. *In re Benny M.*, 2017 IL 120133, ¶ 29. Ordering restraints on a defendant without following the procedures established in *Boose* constitutes a violation of due process. *Id.*

¶ 65    The defendant acknowledges that he was never restrained when appearing in the circuit court. There is also no indication that the circuit court ever considered ordering the defendant restrained at any hearing or any indication that he might be in restraints at future hearings. The defendant does not cite anything within our supreme court's decision in *Boose*, or any authority, that creates a requirement of a preemptive *Boose* hearing in circumstances like those present here. Our courts generally "do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). As such, we agree with the circuit court that the issue of restraints was moot because the defendant was never placed in restraints in his appearances before the circuit court.

20

¶ 66    The defendant, however, argues that the public interest exception to mootness applies here. This exception allows the court to consider a moot issue where "(1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *Id.* at 355. The public interest exception is narrowly construed and requires a clear showing of all three factors. *Id.* at 355-56. The defendant claims that a finding is necessary under this exception because there is no precedent on this issue as no prior involuntarily committed defendant has raised this issue, and other defendants subject to involuntary commitment may be restrained in the future.

¶ 67    We disagree with the defendant that the circuit court was required to hold a preemptive hearing under the public interest exception on a hypothetical issue simply because other defendants have not tried to do what the defendant is doing here. The defendant does not establish how a decision on his motion would fulfill the three requirements for the public interest exception. The defendant also does not raise any credible concern that a circuit court, faced with the issue of a defendant in physical restraints, will not be able to correctly apply the factors in *Boose* and its progeny to make a finding of manifest necessity. We, therefore, conclude that the circuit court properly denied the defendant's requests for a *Boose* hearing as moot.

¶ 68                    D. Witness Attendance, Transfer, and Testimony

¶ 69    The next issue that the defendant argues on appeal is that he was prejudiced because the State and the circuit court obstructed the testimony of Dr. Olt, obstructed the appearance of witnesses, and improperly admitted hearsay testimony from Lynn, Dr. Horstman, and Dr. Cuneo. We will address these arguments in the order presented.

¶ 70    The defendant first argues that he had originally subpoenaed Dr. Olt for the October 1, 2019, hearing. He contends that the State, rather than moving to quash the subpoena, informed Dr.

21

Olt not to come, and then requested a continuance. The defendant states that he objected to the continuance and to the circuit court's alleged disregard of the subpoena. The defendant claims that, if Dr. Olt had been allowed to testify at the October 1, 2019, hearing, the circuit court would have been presented with the evidence that Dr. Olt had never seen any indication of mental illness in the three years that he had known the defendant, as well as 13 exhibits from various doctors and social workers stating that the defendant was in remission and displayed no symptoms. The defendant concludes that, if the circuit court had heard this evidence in October 2019, the evidence would have been sufficient to require a ruling that commitment was not appropriate, because the defendant was not displaying any symptoms of a mental illness at that time.

¶ 71    We do not find any support for the defendant's contentions that the State or the circuit court attempted to interfere with Dr. Olt's testimony or the submission of any evidence at the October 1, 2019, hearing. The report of proceedings for the October 1, 2019, hearing demonstrates that the circuit court addressed, and granted, the defendant's motion to proceed *pro se*. The circuit court then addressed the defendant's *Boose* motion, ruling that the motion was moot, and noted that the defendant had several more pending motions along with the fact that the defendant had recently filed his amended petition.

¶ 72    Given the recent filings by the defendant, the State requested 30 days in order to respond. The defendant objected to the 30-day continuance citing section 3-800(b) of the Mental Health Code (405 ILCS 5/3-800(b) (West 2018)), that states that a circuit court may only grant a 15-day continuance unless the continuance is requested by the defendant. Over the defendant's objection, the circuit court granted the State's request for a 30-day continuation. There was no mention at the October 1, 2019, hearing by the defendant, the State, or the circuit court regarding Dr. Olt, or any mention of a subpoena for Dr. Olt.

¶ 73    Generally, a circuit court's decision to grant or deny a motion to continue is a discretionary matter that will not be set aside upon review unless it amounts to an abuse of discretion. *People v. Hillsman*, 329 Ill. App. 3d 1110, 1118 (2002). An abuse of discretion occurs where the circuit court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *People v. McGath*, 2017 IL App (4th) 150608, ¶ 55.

¶ 74    Here, the defendant objected to the continuance based on section 3-800(b) of the Mental Health Code (405 ILCS 5/3-800(b) (West 2020)). The failure to strictly adhere to section 3-800(b), however, does not render a circuit court's determination invalid. *In re James W.*, 2014 IL 114483, ¶ 35. Our supreme court has determined that section 3-800(b) is directory, not mandatory, because it imposes no consequences for the circuit court's failure to comply. *Id.* ¶¶ 35-36.

¶ 75    Further, the defendant's contentions relate to the alleged attempts by the State and/or the circuit court to interfere with Dr. Olt's testimony and the submission of evidence, yet the defendant did not raise the issue of Dr. Olt's testimony, nor did he attempt the submission of the alleged evidence at the hearing. "[U]nder the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error." *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17.

¶ 76    As such, the circuit court's decision to grant the State's request for a continuance over the defendant's objection was not arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. Therefore, we find that the circuit court did not abuse its discretion in granting the continuance.

¶ 77    Next, the defendant argues that the circuit court erred in denying his motion for service of witnesses. The defendant claims that at the hearing on December 19, 2019, he informed the circuit court that he was indigent and incarcerated, without access to the internet or the addresses of all of

his witnesses. Because the circuit court did not assist him with serving all of his witnesses, the defendant states that five of the witnesses he requested were never subpoenaed and he was denied due process due to his inability to subpoena all of his witnesses.

¶ 78   *Pro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. Our courts strictly adhere to these principles, and a *pro se* litigant is not entitled to more lenient treatment than attorneys. *Id.*

¶ 79   The circuit court addressed the defendant's failure to properly serve various witnesses, including witnesses for whom the defendant did not have an address. The circuit court reiterated to the defendant that he had chosen to represent himself, and in doing so, was bound by the same rules and obligations as an attorney. The circuit court reminded the defendant that it had explained the ramifications of self-representation at the hearing on his motion to proceed *pro se*. The circuit court again offered the defendant the appointment of counsel who would be able to successfully obtain service on witnesses. Furthermore, the circuit court allowed for continuances to give the defendant additional time to effectuate service, and, despite explaining that it could not serve his witnesses for him, offered advice on how the defendant could successfully serve his witnesses.

¶ 80   As previously stated, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error. *Harding*, 2012 IL App (2d) 101011, ¶ 17. Here, the defendant was well aware of the limited resources available due to his confinement, yet he declined the appointment of counsel and elected to proceed *pro se*. Thus, we find no basis for the defendant's argument that the circuit court deprived him due process due to this inability to subpoena all of this witnesses.

¶ 81    The defendant further argues that his failure to subpoena the five witnesses resulted in inadmissible hearsay evidence. The defendant argues that the State's evidence consisted of reports from Lynn, Dr. Horstman, and Dr. Cuneo and that these reports were derived from statements and observations of the five excluded witnesses. The defendant moved to exclude those reports as "*ex parte* examinations functioning as conduits of inadmissible hearsay testimonials" and the circuit court denied the motion. The defendant also claims that the State did not end up submitting any reports from Lynn, Dr. Horstman, or Dr. Cuneo into the record, and therefore provided no documentary basis for the alleged hearsay testimony of these three witnesses. He further argues that the circuit court's admittance of hearsay testimony deprived him of the right to confront witnesses against him.

¶ 82    Again, under the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error. *Harding*, 2012 IL App (2d) 101011, ¶ 17. Here, it was the defendant who called those witnesses and upon examination, questioned those witnesses about various reports and treatment notes they prepared over the course of his hospitalization but now claims on appeal that such testimony was hearsay. Further, as long as the underlying information is of the type reasonably relied on by experts in the particular field, an expert may give opinion testimony that relies on facts and data not in evidence. *People v. Becera*, 2020 IL App (2d) 190067-U, ¶ 16 (citing *In re Commitment of Tenorio*, 2020 IL App (1st) 182608, ¶ 43).

¶ 83    As stated above, the defendant was given every opportunity to subpoena witnesses, or have counsel reappointed to ensure the obtainment of witnesses. The defendant declined the appointment of counsel and proceeded *pro se*. If he was unable to subpoena the five witnesses, it was not due to any error or impropriety on the part of the circuit court.

¶ 84   The defendant's final argument with regard to witnesses is whether the circuit court erred in denying his motion to transfer venue to Sangamon County. The defendant had alleged that the transfer was necessary to ensure the attendance of Alicia Rievers, an indigent, intellectually disabled witness who lived near the courthouse in Sangamon County. See 405 ILCS 5/3-800(a) (West 2018).

¶ 85   Alicia Rievers did appear and testified at the December 19, 2019, hearing. The defendant admits that he was able to examine Rievers, and he does not claim that her testimony was impacted in any way by the fact that she had to give her testimony in St. Clair County rather than Sangamon County. The defendant argues, however, that the issue is not moot and again raises the public interest exception to mootness. He claims that the exception should apply because there is "substantial likelihood that this scenario would arise again for the defendant," and the liberty interests of involuntarily committed insanity acquittees is a matter of public concern.

¶ 86   We find that this issue is moot given that Rievers successfully appeared in court in St. Clair County and testified. We further find that the public interest exception does not apply for the same reasons stated in our review of the denial of the defendant's motion for a *Boose* hearing. The public interest exception is narrowly construed and requires a clear finding of all three aforementioned factors. *In re Alfred H.H.*, 233 Ill. 2d at 355-56. There is no reason to believe that a circuit court tasked with determining the necessity of transfer to assure the attendance of a material witness will not have adequate guidance in our existing precedent.

¶ 87                                 E. Constitutionality of Section 5-2-4

¶ 88   The defendant next argues that section 5-2-4 is unconstitutional because it "requires the government to provide an opinion as to dangerousness due to mental illness, and because the government requires that opinion be based upon administrative considerations rather than

26

individualized professional judgments, it cannot be said to comport with due process." He refers to section 5-2-4(b) of the Code, which requires the facility director to file treatment plan reports with the circuit court every 90 days, and states that the report "shall include an opinion as to whether the defendant is currently in need of mental health services on an inpatient basis or in need of mental health services on an outpatient basis." 730 ILCS 5/5-2-4(b) (West 2020).

¶ 89 The defendant argues that the testimony of the various DHS witnesses shows that, while individual treaters gave their professional opinions that he did not exhibit symptoms of mental illness and he was in remission, DHS had a "blanket policy" that substituted for professional decision-making. Therefore, he concludes that section 5-2-4 is unconstitutional because it supports depriving defendants of their liberty without due process, by requiring the filing of treatment plan reports that were not based on individual examinations of the defendant, but on "the arbitrary assumption an individual is dangerous due to mental illness if the treatment team doesn't petition for liberties."

¶ 90 Section 5-2-4 affords the circuit court broad discretion in determining whether a defendant is mentally ill and/or dangerous, and "the responsibility for considering and weighing the evidence lies with the fact finder and not the psychiatrist." *Bryson*, 2018 IL App (4th) 170771, ¶ 62. Section 5-2-4(g) provides a nonexhaustive list of factors that the circuit court may consider, including "any other factor or factors the Court deems appropriate" at the hearing on a section 5-2-4(e) petition. (Internal quotation marks omitted.) *Id.* ¶ 58. Nothing in the statute requires the circuit court to accept expert testimony. *Id.* Rather, the circuit court weighs expert opinions with all of the other evidence and draws its own conclusions. *Id.* (citing *People v. Cross*, 301 Ill. App. 3d 901, 911 (1998)).

¶ 91 This court has previously found that "compliance with the procedures outlined in the Mental Health Code and the statute governing proceedings after a finding of not guilty by reason of insanity is sufficient to protect the defendant's due process rights." *People v. Johnson*, 2012 IL App (5th) 070573, ¶ 17. We find nothing in the record to support the defendant's allegation that DHS had a "blanket policy" or that his treatment plan reports were not based on individual examinations of the defendant. Therefore, we find the defendant's argument that section 5-2-4 is unconstitutional to be without merit.

¶ 92                    F. Manifest Weight of the Evidence

¶ 93 The final issue raised by the defendant is whether the circuit court's denial of his petition was against the manifest weight of the evidence. The defendant selects largely out-of-context statements primarily from Dr. Olt and Dr. Zhang to argue that the evidence shows that he is not mentally ill, does not display any symptoms, does not need medication, and is not dangerous.

¶ 94 We restate that we will not disturb the circuit court's determination on the petition for conditional release unless it is against the manifest weight of the evidence, meaning where the opposite conclusion is clearly evident or the court's findings are arbitrary, unreasonable, or not based on the evidence presented. *Wolst*, 347 Ill. App. 3d at 790. Although the defendant argues that the circuit court's denial of his petition was against the manifest weight of the evidence, our review of the testimony at the hearing demonstrates that not a single witness testified that it was their belief that the defendant should be conditionally released.

¶ 95 Dr. Horstman testified that, while the defendant's condition was in sustained remission, he had recently exhibited symptoms including paranoia, hostility, and aggression. She opined that the defendant was neither stable nor safe to the community. Lynn testified that while she did not observe the defendant experiencing symptoms of psychosis, she also stated that he was not

focusing on his treatment and was not ready for conditional release. While Dr. Zhang testified that he diagnosed the defendant as being in remission and had not observed the defendant to exhibit symptoms of psychosis, he testified that schizoaffective disorder is a chronic condition, that he had not examined the defendant since February 2019, and that he also did not recommend conditional release.

¶ 96 Lastly, Dr. Olt testified that he did not know the defendant to have ever caused harm or acted aggressively, or to have exhibited mental illness symptoms. He further testified that he had not read the reports from the defendant's treatment team, and that he was not recommending the defendant for immediate conditional release. Rather, he clarified that he believed the defendant should start the process towards eventual community reintegration.

¶ 97 We find considerable support in the record that the circuit court's ruling was not arbitrary, unreasonable, or not based on the evidence presented. Accordingly, we find that the circuit court's denial of the defendant's petition for conditional release was not against the manifest weight of the evidence.

¶ 98 III. CONCLUSION

¶ 99 For the reasons stated, the circuit court did not err in dismissing the defendant's petition for conditional release. Accordingly, the judgment of the circuit court is affirmed.

¶ 100 Motion denied; judgment affirmed.