# Illinois Official Reports

## Supreme Court

## In re Benny M., 2017 IL 120133

| | |
|---|---|
| Caption in Supreme Court: | *In re* BENNY M. (The People of the State of Illinois, Appellant, v. Benny M., Appellee). |
| Docket No. | 120133 |
| Filed | November 30, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kane County, the Hon. Robert Villa, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Joseph H. McMahon, State's Attorney, of St. Charles (David L. Franklin, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of Chicago, and Patrick Delfino, Lawrence M. Bauer, and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of Elgin, of counsel), for the People.

Veronique Baker, Ann Krasuski, and Laurel Spahn, of the Legal Advocacy Service of the Illinois Guardianship and Advocacy Commission, of Hines, for appellee. |

Justices          JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     In this case, the trial court permitted the respondent to remain shackled during a hearing on the State's petition seeking to administer psychotropic medication involuntarily. The trial court granted the State's petition. The appellate court reversed the trial court's judgment, holding that the trial court erred in allowing respondent to be physically restrained during the hearing. For the following reasons, we reverse the appellate court's judgment.

¶ 2                              I. BACKGROUND

¶ 3     After being found unfit to stand trial on a charge of domestic battery against his mother, the respondent, Benny M., was admitted involuntarily to the Elgin Mental Health Center. Respondent was medicated involuntarily and later found fit to stand trial. Respondent was transferred to the jail, stopped taking his psychotropic medication, and was again found unfit to stand trial. Respondent was then transferred back to the Elgin Mental Health Center, and the State filed the petition at issue in this case seeking to administer psychotropic medication involuntarily.

¶ 4     A hearing was held in Kane County circuit court on the petition on two separate days. On the first day, respondent was physically restrained while being transported, but the shackles were removed before he entered the courtroom. Dr. Donna Luchetta testified that she was a treating psychiatrist at the Elgin Mental Health Center and diagnosed respondent with schizoaffective disorder. Respondent suffered from several symptoms, including delusions that he did not have a mental illness and a belief that he did not need medication. Respondent also experienced severe mood swings with depressive periods followed by "elevated" periods when he would attempt to grab and kiss female interns.

¶ 5     Dr. Luchetta testified that respondent's condition and ability to function deteriorated when he did not take his medication. She noted that an order to treat respondent involuntarily expired the previous day and respondent was refusing medication. Following Dr. Luchetta's direct examination, the hearing was continued for two weeks.

¶ 6     When the hearing resumed, respondent was physically restrained, and his attorney asked for the shackles to be removed. The trial court inquired whether the shackles were necessary for security. The security officer stated that respondent was "listed as high elopement risk" and submitted a "patient transport checklist" to the court. The checklist was not admitted into evidence and is not included in the record on appeal. In response to the trial court's inquiry, respondent's attorney stated she had not reviewed the document. Respondent then stated,

> "I just want to say something. High risk case for elopement, where am I going to go? I'm trapped. *** I said I wanted to be here, and I was willing to even be present in

- 2 -

this crap. This is kind of interesting. I mean I can laugh about it, too. I have a sense of humor."

The trial court then stated, "I will leave him in custody in the shape he is in now. The request is denied."

¶ 7 Respondent's attorney asked if respondent's right hand could be released to take notes and communicate with her during the hearing. Respondent interjected, "Do you think I am going to take the pen or something and try to stab someone with it?" The trial court stated, "There's obviously got to be a balance of whatever security feels is necessary and his ability to participate. Do you feel that he is unable to participate in the court proceedings *** with his hands restrained?" Respondent's counsel replied that respondent was unable to participate with his right hand restrained. When the trial court asked respondent if he was right-handed, respondent stated he used both hands and asserted,

"I would try to use my left hand as well because I'm not saying most or everyone, but people tend to try different things, have to learn how to write with both. *** If one hand is hurting or whatever, or for some reason, like if someone loses their hand *** through amputation, they may be forced to use their left hand."

¶ 8 At that point, the trial court stated, "If there is need to take notes, I will consider your request." Respondent replied, "I'm speaking, which is even better." The trial court asked respondent's attorney to begin her cross-examination of Dr. Luchetta. When respondent continued to speak, the trial court urged him to listen to his attorney and stated, "If there is a need for you to be writing down some notes or things of that nature, I will consider it at that time. I'm trying to do the best to balance both the security information given to me and your ability to participate."

¶ 9 During cross-examination, Dr. Luchetta testified that respondent had refused to take his medication since the last involuntary treatment order expired 15 days prior and his condition was deteriorating. Respondent interrupted occasionally and commented on Dr. Luchetta's testimony. The trial court told respondent that his attorney was there to represent him and admonished respondent several times that he would be removed from the courtroom if he kept interrupting.

¶ 10 During his own testimony, respondent asserted that he had not been taking his medication because he did not have a mental illness. Respondent commented about the shackles, stating they were "very restrictive." When the judge told respondent he could step down from the witness stand, respondent stated, "If I am still able to walk. I just got up."

¶ 11 In its closing argument, the State observed that respondent's condition had deteriorated since the original hearing date two weeks earlier. The State noted that respondent was able to sit still without interrupting at the first hearing date, but he interrupted repeatedly when the hearing resumed following the continuance. When the State referred to respondent kissing an intern on the cheek without her consent, respondent interrupted the State's argument. The trial court advised respondent that he would be removed from the courtroom the next time he interrupted. The following exchange then occurred:

"[RESPONDENT]: It's crazy.

THE COURT: I will ask him to leave now, please.

[RESPONDENT'S ATTORNEY]: Judge, just for the record, he's been complaining about the shackles the whole hearing.

THE COURT: I have not heard that.

[RESPONDENT'S ATTORNEY]: He's been complaining to me.

THE COURT: I have heard him complain about the language that's being used to describe people. I have heard him interrupt and criticize or comment on what Dr. Luchetta has testified to. I have not heard that. I have heard out loud comments unrelated to the shackles."

¶ 12 The trial court added that "none of those items have ever been a problem for me." Respondent's counsel asserted, "But he has had to stand up because he's been in pain." Respondent stated, "I was talking about the peck I gave on the cheek," and the trial court asserted, "See what I mean? That's not shackle related." Respondent then complained that his restraints had been "tightened" and asked if they could be removed. As the security officer led respondent out of the courtroom, he asserted,

"This is why I'm suffering and deteriorating. I mean look at this. I'm walking like a cripple, and I'm not. As soon as I'm out of here, I will probably be back to being an athlete again, but I mean a little bit of pain, for sure, which I'm not going to be able to take medication for."

¶ 13 The State then finished its argument. In her closing argument, respondent's attorney asserted that respondent complained about the restraints, stood up several times during the hearing, and indicated he was having cramps. The trial judge responded, "I'm certain that those comments are not part of the record. I would have possibly addressed them if he had made them or you had made them on his behalf directly to me." Respondent's attorney stated, "I apologize. I should have." The trial court subsequently granted the petition allowing involuntary administration of psychotropic medication for a period not to exceed 90 days.

¶ 14 Respondent appealed the trial court's judgment, contending that he was denied a fair trial because he was shackled during the hearing. The appellate court acknowledged that the appeal was moot but agreed with respondent that it fell within both the public interest exception to mootness and the exception for issues capable of repetition, yet evading review. 2015 IL App (2d) 141075, ¶ 19. The appellate court held that the trial court abused its discretion in shackling respondent because the court did not conduct an independent assessment of the factors bearing on that decision or make explicit findings that shackling was necessary. 2015 IL App (2d) 141075, ¶ 33. The appellate court further concluded that the error could not be considered harmless beyond a reasonable doubt. 2015 IL App (2d) 141075, ¶ 36. Accordingly, the trial court's judgment was reversed. 2015 IL App (2d) 141075, ¶ 38.

¶ 15 We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)).

¶ 16 II. ANALYSIS

¶ 17 Initially, we must consider our own jurisdiction over this appeal as a threshold inquiry. The existence of an actual controversy is essential to appellate jurisdiction. *In re Lance H.*, 2014 IL 114899, ¶ 12. Courts of review generally will not decide abstract, hypothetical, or moot questions. *In re James W.*, 2014 IL 114483, ¶ 18. An appeal is moot when the issues involved in the trial court no longer exist because intervening events have made it impossible for the reviewing court to grant the complaining party effectual relief. *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003).

- 4 -

¶ 18    Here, the involuntary treatment order entered on October 3, 2014, was effective for a period not to exceed 90 days. The order expired long ago, and it is impossible for this court to grant effective relief from that order. Accordingly, this appeal is moot.

¶ 19    We must, therefore, determine whether a mootness exception applies. *In re Linda B.*, 2017 IL 119392, ¶ 17; *In re Lance H.*, 2014 IL 114899, ¶ 13. The State contends the appellate court correctly held that both the public interest exception and the exception for issues capable of repetition yet evading review apply to this case. We first consider the mootness exception for issues capable of repetition yet evading review. That exception has two elements. First, the challenged action must be too short in duration to be litigated fully prior to its cessation. *In re Alfred H.H.*, 233 Ill. 2d 345, 358 (2009) (citing *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)). The first element has been met in this case because the 90-day duration of the order was too brief to allow appellate review. See *In re Alfred H.H.*, 233 Ill. 2d at 358.

¶ 20    The second element of the exception requires a reasonable expectation that the same complaining party will be subject to the same action again. *In re Alfred H.H.*, 233 Ill. 2d at 358 (citing *In re Barbara H.*, 183 Ill. 2d at 491). Respondent contends that although he was the complaining party in the appellate court, the State is now the complaining party for purposes of establishing this mootness exception because the State is the appellant before this court. According to respondent, he "has his resolution" of the issue, and the State is not entitled to further review because there is no reasonable expectation that it will be subject to the same action again.

¶ 21    Viewing the State as the complaining party would be nonsensical, however, because it is obviously never subject to shackling and would have no reason to complain of that action. In *Barbara H.*, this court applied the capable of repetition yet evading review exception in a similar procedural context. There, as in this case, the respondent was the appellant in the appellate court, and the State was the appellant before this court. This court, nonetheless, viewed the respondent as the complaining party for purposes of applying the mootness exception, holding there was a reasonable expectation that she would be subject to the same action again because she had a history of mental illness and hospitalization, including involuntary hospitalization. *In re Barbara H.*, 183 Ill. 2d at 492. Consistent with *Barbara H.*, we view respondent as the complaining party in applying this mootness exception.

¶ 22    This court has explained that the capable of repetition yet evading review exception applies when resolution of the issue "would be likely to affect a future case involving respondent." *In re Alfred H.H.*, 233 Ill. 2d at 359. There must be a substantial likelihood that resolution of the issue presented would have some bearing on a similar issue raised in a subsequent case. *In re Alfred H.H.*, 233 Ill. 2d at 360. This court held the capable of repetition yet evading review exception did not apply in *Alfred H.H.* because the respondent claimed on appeal that there was insufficient evidence to order his involuntary commitment and there was no clear indication of how resolution of that fact-specific issue could be used by the respondent in future litigation. *In re Alfred H.H.*, 233 Ill. 2d at 360.

¶ 23    In contrast, this case involves the standards and procedure for allowing a respondent to remain shackled in an involuntary treatment proceeding. The State and respondent disagree on whether the trial court must state on the record its reasons for imposing restraints. Respondent also contends the appellate court failed to recognize that his attorney should be given an

opportunity to present reasons for removing the restraints. Thus, there is a dispute on the procedure used in the trial court for ordering restraints in these cases.

¶ 24    There is also a reasonable expectation that respondent will be subjected to restraints again in an involuntary commitment or treatment proceeding. Dr. Luchetta testified that respondent believes he does not have a mental illness and that he does not need medication. Respondent confirmed those statements when he testified that he had refused medication because he did not have a mental illness. The record establishes a pattern of respondent refusing to take medication followed by the deterioration of his condition, eventually ending in involuntary commitment and treatment proceedings. The record further shows respondent was transported in restraints to both hearing dates on this petition, even though they were removed without objection before the first hearing date. Thus, it appears that restraints were used as a matter of course in transporting respondent. We believe there is a reasonable expectation that respondent will be subjected to restraints again, given his history of mental illness and involuntary admission and treatment. See *In re Barbara H.*, 183 Ill. 2d at 492. A resolution of the issues presented in this appeal will likely have some bearing on future litigation involving respondent. See *In re Alfred H.H.*, 233 Ill. 2d at 360. Accordingly, we conclude this appeal satisfies both requirements of the mootness exception for issues capable of repetition yet evading review.

¶ 25    On the merits, the State contends the appellate court erred in holding that the trial court must state explicitly its reasons for shackling a respondent. According to the State, the trial court's reasons for imposing restraints should be clear from the record, but there is no requirement for the court to state those reasons explicitly. The State maintains that the trial court's basis for imposing restraints is clear from the record and the court did not err in permitting respondent to remain shackled.

¶ 26    Respondent contends the trial court erred because it failed to make an independent determination of whether shackles were necessary, failed to allow counsel an opportunity to provide reasons for removing the shackles, and did not state on the record any reason for imposing restraints during the hearing. Respondent asserts that the trial court simply deferred to the security officer and the patient transport checklist. Respondent, therefore, maintains that the appellate court did not err in reversing the trial court's judgment.

¶ 27    We have not previously considered the standards or procedure for imposing restraints in involuntary admission or treatment proceedings. We have considered the issue of physical restraints in criminal proceedings, however, and have long held that they may be used only upon a showing of manifest necessity. *People v. Allen*, 222 Ill. 2d 340, 347 (2006) (citing *People v. Boose*, 66 Ill. 2d 261, 265-66 (1977)). In criminal cases, this court has determined it is impermissible to impose unnecessary restraints even when there is no jury because they hinder the defendant's ability to assist counsel, run afoul of the presumption of innocence, and demean both the defendant and the proceedings. *Allen*, 222 Ill. 2d at 346. This court has stated,

> " 'In the absence of exceptional circumstances, an accused has the right to stand trial "with the appearance, dignity, and self-respect of a free and innocent man." [Citation.] It jeopardizes the presumption's value and protection and demeans our justice for an accused without clear cause to be required to stand in a courtroom in manacles or other restraints while he is being judged.' " *Allen*, 222 Ill. 2d at 346 (quoting *In re Staley*, 67 Ill. 2d 33, 37 (1977)).

- 6 -

¶ 28    The Supreme Court has further explained that judges must seek to maintain a dignified judicial process, including the respectful treatment of defendants. *Deck v. Missouri*, 544 U.S. 622, 631 (2005). The courtroom's formal dignity reflects the importance of the matter at issue and a seriousness of purpose that helps to inspire confidence in the judicial system. *Deck*, 544 U.S. at 631. "[T]he use of shackles at trial 'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.' " *Deck*, 544 U.S. at 631 (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). Accordingly, physical restraints should be avoided whenever possible, and a criminal defendant may be shackled only when there is reason to believe he or she may try to escape or may pose a threat to the safety of people in the courtroom, or when necessary to maintain order during the trial. *In re Staley*, 67 Ill. 2d at 38 (citing *Boose*, 66 Ill. 2d at 266).

¶ 29    The determination of whether and how to restrain a criminal defendant is left to the trial court's discretion. *Allen*, 222 Ill. 2d at 348. The defendant's attorney should be given an opportunity to present reasons for removing the restraints, and the trial court should state on the record its reasons for permitting the defendant to remain shackled. *Boose*, 66 Ill. 2d at 266. A trial court's failure to follow the procedure set forth in *Boose* before ordering restraints results in a due process violation. *Allen*, 222 Ill. 2d at 349; see also *Deck*, 544 U.S. at 632 ("given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case").

¶ 30    This court subsequently codified its holdings in *Boose* and *Allen* in Illinois Supreme Court Rule 430 (eff. July 1, 2010). Rule 430 requires the trial court in a criminal proceeding to conduct a separate hearing after becoming aware of restraints to determine whether they are necessary. The trial court must consider the following enumerated factors taken from our decision in *Boose*:

"(1) the seriousness of the present charge against the defendant;

(2) defendant's temperament and character known to the trial court either by observation or by the testimony of witnesses;

(3) defendant's age and physical attributes;

(4) defendant's past criminal record and, more particularly, whether such record contains crimes of violence;

(5) defendant's past escapes, attempted escapes, or evidence of any present plan to escape;

(6) evidence of any threats made by defendant to harm others, cause a disturbance, or to be self-destructive;

(7) evidence of any risk of mob violence or of attempted revenge by others;

(8) evidence of any possibility of any attempt to rescue the defendant by others;

(9) size and mood of the audience;

(10) physical security of the courtroom, including the number of entrances and exits, the number of guards necessary to provide security, and the adequacy and availability of alternative security arrangements." Ill. S. Ct. R. 430 (eff. July 1, 2010).

Rule 430 provides that, "[a]fter allowing the defendant to be heard and after making specific findings, the trial judge shall balance these findings and impose the use of a restraint only

where the need for restraint outweighs the defendant's right to be free from restraint." Ill. S. Ct. R. 430 (eff. July 1, 2010).

¶ 31 This court recently adopted a separate rule for the use of restraints in juvenile delinquency proceedings. In determining whether restraints are necessary, Rule 943 requires the court to consider enumerated factors bearing upon the risk of escape and threats to the safety of people in the courtroom. Ill. S. Ct. R. 943(a) (eff. Nov. 1, 2016). Trial courts must also consider whether there are any less restrictive alternatives to restraints, and if restraints are imposed, they must be the least restrictive ones available to restrain the minor. Ill. S. Ct. R. 943(a), (c) (eff. Nov. 1, 2016). Rule 943 sets forth the same basic procedure for making a decision on restraints as Illinois Supreme Court Rule 430 and our criminal cases. The rule states, "The court must provide the minor's attorney an opportunity to be heard before the court orders the use of restraints. If restraints are ordered, the court shall enter an order setting forth its findings of fact." Ill. S. Ct. R. 943(b) (eff. Nov. 1, 2016).

¶ 32 In *In re Mark P.*, our appellate court considered the issue of restraints in involuntary admission proceedings. The precise issue presented in that appeal was whether a person appearing for trial before a judge should be shackled without good cause shown on the record. *In re Mark P.*, 402 Ill. App. 3d 173, 176 (2010). On that point, the appellate court held that "[a]t minimum, a respondent appearing before a judge for trial or hearing should not be shackled without good cause shown on the record." *In re Mark P.*, 402 Ill. App. 3d at 178. The appellate court concluded that the trial court erred by failing to exercise its discretion and determine whether the respondent should be restrained. *In re Mark P.*, 402 Ill. App. 3d at 177-78. Instead, the trial court simply deferred to the deputy's preference for the respondent to remain shackled. *In re Mark P.*, 402 Ill. App. 3d at 177. In the course of its decision, the appellate court observed that some aspects of Rule 430 and our decisions in *Boose* and *Allen* are "classically criminal" and cannot be applied to involuntary admission cases. *In re Mark P.*, 402 Ill. App. 3d at 175. The court stated there was no precedent on whether a *Boose* hearing was required in an involuntary commitment proceeding and that question was not raised or preserved for review. *In re Mark P.*, 402 Ill. App. 3d at 176-78.

¶ 33 A review of the case law, therefore, establishes that routine imposition of restraints is prohibited because it diminishes a defendant's or respondent's ability to assist counsel, undermines the presumption of innocence, and demeans both the defendant or respondent and the judicial process. *Deck*, 544 U.S. at 630-31; *Allen*, 222 Ill. 2d at 346; *Boose*, 66 Ill. 2d at 265. While involuntary treatment proceedings do not involve a presumption of innocence, the other concerns weighing against unnecessary use of restraints in criminal and juvenile delinquency proceedings also apply here. A respondent's ability to assist counsel and the dignity of the court proceedings are important concerns in involuntary treatment proceedings, and those interests may be impacted by unnecessary restraints the same as in criminal and juvenile delinquency proceedings.

¶ 34 Accordingly, we hold that, as in criminal and juvenile delinquency cases, trial courts may order physical restraints in involuntary treatment proceedings only upon a finding of manifest necessity. Trial courts must exercise their discretion and make an independent determination on whether to impose physical restraints. A finding of manifest necessity for restraints must be based on the risk of flight, threats to the safety of people in the courtroom, or maintaining order during the hearing. See *In re Staley*, 67 Ill. 2d at 38 (citing *Boose*, 66 Ill. 2d at 266).

¶ 35    The parties disagree on the procedural requirements for imposing restraints in involuntary treatment proceedings. Respondent contends the trial court must allow the respondent's attorney an opportunity to be heard on restraints and make explicit findings on whether restraints should be imposed.

¶ 36    As explained above, our case law and Illinois Supreme Court Rules 430 and 943 consistently provide that the defendant's or respondent's attorney must be given an opportunity to be heard on reasons for removing the restraints and the trial court must state on the record its reasons for allowing the defendant to remain shackled. Those requirements promote a considered decision by the trial court on the use of physical restraints. They also facilitate appellate review of the trial court's decision by ensuring that the reasons for imposing restraints are clear from the record. The fact that those requirements are included in this court's case law and Rules 430 and 943 shows that they are important to any decision on the use of restraints. Given the benefits of those requirements and the consistency of their use in other types of proceedings, we see no reason to exclude them from involuntary treatment cases. Accordingly, we hold that before ordering restraints in involuntary treatment proceedings, the trial court must give the respondent's attorney an opportunity to be heard and must state on the record the reasons for allowing the respondent to remain shackled.

¶ 37    We do not attempt to list the factors to be considered in making this decision. We agree with the appellate court's decision in *Mark P.* that not all aspects of our criminal case law and Rule 430 naturally apply to involuntary admission and treatment cases. *In re Mark P.*, 402 Ill. App. 3d at 175. Thus, some of the factors from *Boose* that were subsequently incorporated into Rule 430 may not be relevant to involuntary treatment proceedings.

¶ 38    While respondent urges this court to adopt Rule 943 for involuntary treatment cases, that rule governs the physical restraint of minors in juvenile delinquency proceedings, and the factors considered in those cases may not necessarily be relevant here. The medical and therapeutic considerations involved in mental health cases may not be present in adult criminal or juvenile delinquency proceedings. We, nonetheless, reiterate that any factors considered in determining whether physical restraints are necessary should bear on the risk of flight, threats to people in the courtroom, or maintaining order during the hearing.

¶ 39    In this case, respondent contends the trial court failed to make an independent determination on whether the restraints were necessary and its decision amounted to "blind deference" to the security officer. We disagree with respondent's characterization of the trial court's decision.

¶ 40    The record shows that the trial court questioned the security officer after respondent's attorney asked for removal of the restraints. The security officer stated respondent was "listed as a high elopement risk" and provided the court with a "patient transport checklist." The trial court made several statements in the course of discussing the matter with respondent and his attorney, including a statement about balancing "whatever security feels is necessary and [respondent's] ability to participate." Ultimately, however, the trial court concluded, "If there is a need for you to be writing down some notes or things of that nature, I will consider it at that time. I'm trying to do the best to balance both the security information given to me and your ability to participate."

¶ 41    Throughout the hearing, the trial court made statements indicating it was considering the information and making an independent determination. The trial court expressly stated it was

balancing the available information. Notably, there was no authority requiring the trial court to consider the *Boose* factors in this type of proceeding. In *Mark P.*, the appellate court did not adopt those factors for application in involuntary commitment proceedings or determine that a *Boose* hearing was required. We conclude that the record, read in its entirety, shows the trial court did not simply defer to the security officer but weighed the information provided and made an independent determination that the restraints were necessary.

¶ 42 Respondent also contends that the trial court erred by failing to allow his attorney an opportunity to be heard on reasons for removing the shackles and by not making explicit findings on the record. In this case, we have held that those *Boose* hearing requirements apply to involuntary treatment proceedings. After becoming aware of the shackles, the trial court should have given respondent's attorney an opportunity to present reasons for removing them and stated on the record its reasons for allowing respondent to remain shackled.

¶ 43 The State, however, contends that respondent forfeited his arguments on the procedure used by the trial court by failing to object during the hearing. The failure to object to an alleged error at trial ordinarily results in forfeiture of the issue on appeal. *Allen*, 222 Ill. 2d at 350.

¶ 44 In *Mark P.*, the respondent's attorney pointed out that the respondent was in handcuffs and asked the trial court to remove them. When the trial court denied that request, the respondent's attorney stated, " 'Can I make an objection on the record? I do object. He is not charged with a crime. It's a civil matter. It seems prejudicial to continue to have him in restraints essentially given the nature of this case.' " *In re Mark P.*, 402 Ill. App. 3d at 174. The appellate court held that the respondent forfeited the issue of whether a *Boose* hearing or a hearing under Rule 430 was required because he did not request a hearing or a factual basis for the trial court's refusal to remove the restraints. *In re Mark P.*, 402 Ill. App. 3d at 177.

¶ 45 Here, respondent's attorney asked for the shackles to be removed. When the trial court denied that request, respondent's attorney asked if respondent's right hand could be released. Respondent's attorney did not, however, object to the procedure used by the trial court in making its decision, ask for any additional opportunity to be heard, or request findings of fact or an explicit statement of the trial court's reasons for permitting respondent to remain shackled. Rather, respondent deferred to the procedure used by the trial court. We conclude that a more specific objection was required to preserve respondent's procedural arguments for review given that the procedure for allowing restraints in involuntary treatment proceedings was not established at the time of the hearing in this case. As in *Mark P.*, respondent's arguments on the procedure used by the trial court were not preserved for review.

¶ 46 Respondent has not made any argument to excuse the forfeiture. Accordingly, we find respondent forfeited his challenge to the specific procedure used by the trial court in this case by failing to object during the hearing.

¶ 47 Finally, we note that respondent does not make a separate argument that the trial court abused its discretion in deciding not to order removal of the restraints. Even if it were raised, the record in this case would not permit review of that argument because there is no statement of the trial court's reasons for allowing respondent to remain shackled.

¶ 48                                    III. CONCLUSION

¶ 49        For the foregoing reasons, the judgment of the appellate court is reversed, and the circuit court's judgment is affirmed.

¶ 50        Appellate court judgment reversed.

¶ 51        Circuit court judgment affirmed.