NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250560-U

NO. 4-25-0560

IN THE APPELLATE COURT

FILED
February 2, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* CHRISTIAN K., a Person Found Subject to Involuntary Admission and Involuntary Administration of Psychotropic Medication, | ) ) ) ) | Appeal from the Circuit Court of Adams County No. 25MH108 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Christian K., Respondent-Appellant). | ) ) ) ) ) ) | Honorable John C. Wooleyhan, Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed the trial court's order for involuntary admission, finding the State failed to submit an adequate predisposition report under section 3-810 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-810 (West 2024)), and reversed the trial court's order for involuntary administration of psychotropic medication, finding respondent and his attorney were not provided adequate notice of the petition or the hearing on the petition, and the trial court improperly held a single hearing addressing both the petition for involuntary admission and the petition for involuntary administration of psychotropic medication.

¶ 2    In May 2025, Sara K., the mother of respondent, Christian K., filed a petition to involuntarily admit him as a patient at Blessing Hospital (Blessing) in Quincy, Illinois. The following day, Dr. Salvador Sanchez filed a petition to involuntarily administer psychotropic medication to respondent. The State prosecuted both petitions at a hearing before the trial court, and the court granted both petitions.

¶ 3 Respondent appeals the trial court's orders, arguing there were numerous violations of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1-100 *et seq.* (West 2024)). In challenging the admission order, respondent argues the State filed an inadequate predisposition report under section 3-810 of the Code (*id.* § 3-810) and the court failed to order the facility director to submit a treatment plan under section 3-209 (*id.* § 3-209). In challenging the medication order, respondent argues the petition did not allege sufficient facts, the State failed to provide adequate notice of the petition and hearing, the court improperly conducted a single hearing on both petitions, the State failed to show that it made a good-faith effort to determine whether respondent had a healthcare power of attorney, and the State introduced insufficient evidence of the risks and benefits of the proposed medication regime and of respondent's decision-making capacity.

¶ 4 For the following reasons, we reverse the trial court's orders.

¶ 5 I. BACKGROUND

¶ 6 On May 27, 2025, Sarah K., respondent's mother, filed a "Petition for Involuntary/Judicial Admission," asking that respondent be involuntarily admitted as a patient at Blessing. The petition alleged,

> "[Respondent] is diagnosed with Bipolar with Episodes of Mania & Psychosis. He has been off of his medications he becomes hostile and will threaten violence. He worships nature and believes he is his own god. He has been cutting the insides of his wrists. He speaks of Satan and was recently arrested for vandalizing churches with Pentograms [*sic*] and had been seen carrying a gun."

The petition included a signed certification from Sara Van Voorhis, a "caseworker," stating that she gave respondent a copy of the petition on May 24, 2025.

¶ 7    On May 28, 2025, Dr. Sanchez filed a "Petition for Administration of Psychotropic Medications/Electroconvulsive Therapy." This petition alleged, "Patient is currently experiencing manic and psychotic symptoms and was carrying a gun around with him." It further alleged, "[B]ecause of said mental illness or developmental disability, the individual exhibits any one of the following: deterioration of ability to function, suffering or threatening behavior." The first choice of medication was 156 to 234 milligrams of Invega Sustenna, with three alternatives: 900 to 1,200 milligrams of lithium ER, 400 milligrams of Abilify, and 2,000 milligrams of Depakote ER. The petition sought authority to administer medication for 90 days.

¶ 8    On June 2, 2025, the trial court signed an order stating that the "clerk received a Petition and two certifications," setting the cause for hearing that day at 11 a.m., and appointing the public defender as counsel for respondent. That same day, the parties appeared before the trial court on both petitions. The court asked respondent's counsel if he had seen the pleadings, and counsel confirmed he had. The court then asked the State to present evidence on the petition for involuntary admission.

¶ 9    Dr. Sanchez testified that he was a psychiatrist at Blessing, and respondent's counsel stipulated that he was an expert in psychiatry. Dr. Sanchez examined respondent and prepared a predisposition report for the hearing. He testified that respondent came to Blessing on May 24, 2025, after reports that he "had been displaying manic and psychotic behaviors, erratic behavior." Dr. Sanchez added, "[Respondent] made statements of being a devil worshipper and was carrying around a gun and a baseball bat, including close to churches and a school in his community of residence."

¶ 10    Dr. Sanchez testified he attempted to have "daily contact" with respondent since he arrived at Blessing. He explained that respondent was "quite belligerent," and respondent used

"vulgar, foul language against [Dr. Sanchez], even threatening language." Dr. Sanchez diagnosed respondent with "bipolar disorder type 1," adding, "Most recent episode is manic with psychosis." He claimed respondent engaged in "reckless behaviors placing himself and others at risk," including "[c]arrying a firearm with him and a baseball bat." Dr. Sanchez explained respondent had refused medication at first, but added, "Last night [respondent] agreed to take one dose of his medications because he thought that way he would avoid being present in court."

¶ 11 When asked for his recommendations for treatment, Dr. Sanchez testified,

"I would respectfully recommend, number one, that this patient be court-ordered to the facility for a period not to exceed 90 days with a leave to transfer to a facility of the Department of Human Services should the need arise. And number two, we are also respectfully requesting a court order for administration of psychotropic medications."

Dr. Sanchez believed that inpatient treatment was the least restrictive setting and outpatient treatment was inappropriate. He testified, "The patient lacks insight. He has not been compliant with treatment and medication. Nothing has changed since his admission. As stated above, he has displayed dangerous behaviors, threatening behaviors placing him at the risk of harm of himself and others in the community."

¶ 12 Throughout Dr. Sanchez's testimony, respondent shouted interruptions. He called either Dr. Sanchez or the assistant state's attorney "Psycho" and "Skank." When Dr. Sanchez testified that respondent "appear[ed] to have lost touch with reality," respondent interjected, "You have lost touch with reality." Later, he interrupted, "I'm not going to sit here and be lied about. You can suck my dick. I'm done. I'm not doing this shit." The trial court then noted that respondent had "voluntarily" left the room.

¶ 13        On cross-examination, Dr. Sanchez acknowledged that he had not met with respondent in person. Instead, all their interactions were remote. He also testified that he had interacted with respondent during previous periods of hospitalization, including in February 2025. He admitted he did not personally observe respondent carrying a firearm and respondent had not made any "physically threatening gestures" since arriving at Blessing. Dr. Sanchez also reported respondent denied carrying any weapon in public.

¶ 14        After this testimony, the predisposition report and respondent's medical records were admitted into evidence, without objection. The report stated,

> "Patient was admitted with manic and psychotic symptoms. He has been delusional and paranoid and believes that everybody who works in the hospital are murders [*sic*] and that he has been kidnapped. He is extremely irritable and was found wandering around and drawing pentagons [*sic*] [on] local churches stating that he was a devil worshiper. His family reported that he has been walking around a local school carrying a firearm and a plastic baseball bat and those are reasons to believe that he is an imminent threat of harm to self and others."

Under the label, "Treatment Plan," the report stated, "Therapeutic milieu in the unit, psychotherapy and pharmacological management." The report added, "No reasonable treatment alternatives are available at this time." Finally, under "Patient goal," the report stated, "Patient will be able to return to the community without representing an imminent threat of harm to neither [*sic*] self and or others." Respondent's medical records noted that he had two prior inpatient hospitalizations. The records also stated, "Patient denying any current suicidality but did report he has a significant history of suicide attempts. Patient reports attempting to hang himself about a year ago."

¶ 15        The State presented no other evidence on its petition for involuntary admission, and

respondent's attorney presented no evidence. The court then instructed the State to proceed with evidence on the petition for involuntary medication, stating that it would hear arguments on both petitions at the end.

¶ 16    Dr. Sanchez testified that, in his medical opinion, respondent needed psychotropic medication. He explained, "The patient lacks the insight to understand his mental illness and the need for the administration of psychotropic medications in order to improve his mental health state and mental ability to function." Dr. Sanchez claimed that medication would help respondent understand, and the expected benefits from the medication exceeded the expected side effects.

¶ 17    Dr. Sanchez recommended the medication Invega Sustenna. He testified that possible side effects included drowsiness, weight gain, spontaneous involuntary movements, dry mouth, constipation, urinary retention, and dry eyes. An alternative was Abilify. The State asked, "[O]n the Sustenna, what kind of dosage range would you be requesting?" Dr. Sanchez answered, "400 milligrams every four weeks." Another alternative was a 900 milligram daily dose of lithium. A final alternative was up to 2,000 milligrams of Depakote. Dr. Sanchez explained that lithium and Depakote over the "therapeutic window" can be "toxic" but below the window is "ineffective." He added, "Lithium can adversely affect the kidneys and thyroid gland," and Depakote "could affect the liver." Nevertheless, Dr. Sanchez maintained the benefits outweighed these potential side effects.

¶ 18    Dr. Sanchez testified that he tried "numerous times" to discuss the medication with respondent, but respondent refused. Dr. Sanchez did not believe respondent understood the consequences of refusing medication. He explained, "I believe he will continue to deteriorate, continue to present a threat of harm to himself and others. Without treatment, we feel extremely uneasy about presenting him back into the community when we strongly believe he might present

a threat of harm to himself and others." The state's attorney asked, "At this time you've been unable to talk to a next of kin or determine a power of attorney for this individual?" Dr. Sanchez answered, "Correct. Yes, sir," and he confirmed respondent had not signed consents.

¶ 19 On cross-examination, Dr. Sanchez agreed that respondent had not threatened anyone, and he conceded that respondent's attempt to avoid a hearing showed he was aware his conduct would affect the real world. No other evidence was admitted.

¶ 20 The trial court then heard arguments on both petitions. The State argued that respondent was unable to recognize the seriousness of his illness, and without inpatient treatment, he could physically harm himself or others. The State asked the court to grant the petition for involuntary admission and the petition for administration of medication.

¶ 21 Respondent's attorney argued that the predisposition report was insufficient because it provided no timeline for the anticipated treatment or hospitalization. He further argued that respondent's behavior was "eccentric" but not threatening. There was no evidence presented to substantiate any of the allegations of threats of violence. Counsel asked the court to deny both petitions.

¶ 22 The trial court found respondent suffered from a mental illness and, because of that illness, could reasonably be expected to place others in reasonable expectation of harm and was unable to provide for his own basic needs. It found inpatient treatment for up to 90 days was the least restrictive setting. It further found the predisposition report was sufficient. Finally, the court found the State had shown all the required statutory factors for involuntary medication. Therefore, the court granted both petitions.

¶ 23 The court's written orders were preprinted forms with check boxes and blanks to fill in. The order for involuntary admission ordered that respondent be hospitalized at Blessing for

up to 90 days. One checkbox stated, "The Facility Director of the named facility where the Respondent is to be hospitalized/receive treatment shall file a treatment plan with this Court as required by 405 ILCS 5/3-814 within 30 days of the date of this Order." This box was not checked. The "Order For Administration of Authorized Involuntary Treatment (Medication)" stated that its effect shall not exceed 90 days. On each order, the court checked a box indicating "The Respondent is PRESENT in court," but each order also included a handwritten note stating that respondent left before the hearing ended.

¶ 24     This appeal followed.

¶ 25                    II. ANALYSIS

¶ 26                    A. Mootness

¶ 27     The trial court's orders for involuntary admission and medication have expired. Therefore, respondent's appeal is moot. "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Respondent urges us to hear his appeal under either the "capable of repetition yet evading review exception" or the public interest exception.

¶ 28     The capable of repetition yet evading review exception has two components. "First, the challenged action must be too short in duration to be litigated fully prior to its cessation." *In re Benny M.*, 2017 IL 120133, ¶ 19. This element is satisfied here because respondent could not complete his appeal of the admission and medication orders before they expired 90 days after the hearing. See *In re Julie M.*, 2021 IL 125768, ¶ 22 ("The first element is met here because the allegedly defective commitment order and petition could not be fully litigated within 90 days.").

¶ 29     Second, there must be "a reasonable expectation that the same complaining party

will be subject to the same action again." *Benny M.*, 2017 IL 120133, ¶ 19. Moreover, "there must be a substantial likelihood that the issue presented in the instant case, and any resolution thereof, would have some bearing on a similar issue presented in a subsequent case." *Alfred H.H.*, 233 Ill. 2d at 360.

¶ 30    Because of respondent's diagnosis of bipolar disorder, his prior hospitalizations at Blessing, and his behavior during the hearing before the trial court, we find respondent may be subject to other petitions in the future. See *Julie M.*, 2021 IL 125768, ¶ 22 ("[G]iven respondent's history, there is a reasonable expectation that she will be subject to future emergency admissions by certification after presenting at a hospital for both medical and psychiatric care."). The indications in the record that respondent has a history of attempting suicide also support this possibility.

¶ 31    Moreover, because the State, trial counsel, and the trial courts seem either unwilling or unable to comply with the Code, we expect the issues related to the Code's procedures in this appeal may arise again in future proceedings. See *In re Anne W.*, 2025 IL App (4th) 241257, ¶ 19; see also *In re Amanda H.*, 2017 IL App (3d) 150164, ¶ 28 ("[T]he respondent might well be subject to involuntary commitment proceedings in the future and the trial court will likely commit the same alleged errors during those proceedings."); *In re Marcus S.*, 2022 IL App (3d) 160710, ¶ 49 (applying the capable of repetition yet evading review exception because the appeal "involve[d] the State's complete failure to observe several mandatory procedural and substantive requirements of the Code and [respondent's] counsel's ineffectiveness for failing to object to such failures").

¶ 32    We note that respondent, in part, challenges the sufficiency of the evidence. Generally, "appeals that merely challenge the sufficiency of the evidence in a particular case will not suffice" for the capable of repetition yet evading review exception. *Amanda H.*, 2017 IL App

(3d) 150164, ¶ 27; see *Alfred H.H.*, 233 Ill. 2d at 360. Respondent asserts that his arguments regarding the sufficiency of the evidence here concern the nature of the evidence, not their weight, and he therefore asks us to find that these arguments satisfy the requirements for this mootness exception. See *In re Brittany F.*, 2024 IL App (4th) 220788, ¶¶ 30, 49. However, respondent does not explain how his arguments concern the nature of the evidence. Moreover, we find other grounds to reverse the trial court's orders. Therefore, we decline to address respondent's sufficiency of the evidence claims or their relation to the mootness doctrine. Similarly, because we apply the capable of repetition yet evading review exception, we decline to address the public interest exception to the mootness doctrine.

¶ 33                                B. Forfeiture

¶ 34        Before we consider the merits of respondent's claims, we first address respondent's request that we recognize a new exception to the rules of forfeiture.

¶ 35        Generally, "a respondent forfeits an objection to any alleged procedural defects by failing to raise the objection at trial." *Amanda H.*, 2017 IL App (3d) 150164, ¶ 33. However, a party may still seek reversal based on a forfeited error affecting a substantial right if "(1) there was plain error and the evidence was so closely balanced that the error caused prejudice or (2) there was plain error that 'was so serious that it affected the fairness of the [proceedings] and challenged the integrity of the judicial process.' " *In re B.K.*, 362 Ill. App. 3d 324, 329 (2005) (quoting *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

¶ 36        Respondent urges us to find a new exception to these rules. Respondent relies on section 3-101(a) of the Code, which states:

> "The State's Attorneys of the several counties shall represent the people of
>
> the State of Illinois in court proceedings under this Chapter and in proceedings

under Section 2-107.1 in their respective counties, shall attend such proceedings either in person or by assistant, and shall ensure that petitions, reports and orders are properly prepared." 405 ILCS 5/3-101(a) (West 2024).

Respondent highlights the State's duty to "ensure that petitions, reports and orders are properly prepared." *Id.* According to respondent, when the State prosecutes a petition, as it did here, the State's prosecutorial role conflicts with its duty to monitor the filings under section 3-101(a). Respondent suggests that by eliminating any required showing of prejudice on appeal for all cases the State prosecutes under the Code, even in cases involving forfeiture, the appellate court can hold the State "strictly accountable" for ensuring filings are properly prepared, offsetting any conflict of interest.

¶ 37    We decline respondent's invitation to recognize this general exception. As referenced below, the supreme court, in *In re Robinson*, 151 Ill. 2d 126, 134 (1992), and the appellate court in cases following *Robinson*, have developed a specific framework for considering prejudice when counsel fails to object to an inadequate predisposition report under section 3-810 of the Code (405 ILCS 5/3-810 (West 2024)). The State's failure to provide an adequate predisposition report here was reversible error under this framework, without requiring a new exception to the rules of forfeiture. Moreover, we find two bases to reverse the involuntary medication order. Once again, we need not recognize a separate exception to forfeiture based on section 3-101 to resolve this case, and we decline to do so.

¶ 38                          C. Involuntary Admission

¶ 39    Turning to the merits of respondent's appeal, we first address respondent's challenge to the order for involuntary admission. Respondent argues (1) the State filed an inadequate predisposition report and (2) the trial court failed to order the facility director to file a

treatment plan within 30 days of its order. Respondent's first argument provides grounds for reversal, so we address only this argument.

¶ 40         Respondent argues that the State failed to comply with section 3-810 of the Code. Generally, "[b]ecause the Code protects liberty interests, strict compliance with statutory procedures is required." *Amanda H.*, 2017 IL App (3d) 150164, ¶ 34. Our review is *de novo*. *Id.*

¶ 41         Section 3-810 of the Code states:

"Before disposition is determined, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission on an inpatient or outpatient basis, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3-810 (West 2024).

In *Robinson*, our supreme court explained that the purpose of this section "is to provide trial judges certain information necessary for determining whether an individual is subject to involuntary admission to a mental health facility." *Robinson*, 151 Ill. 2d at 133. The court reasoned, "Where a respondent fails to object to the absence of a predispositional report, strict compliance with section 3-810 is required only when the legislative intent cannot otherwise be achieved." *Id.* at 134. If the State fails to file a report containing all the required information and the respondent fails to object to the deficiency, the State may remedy its omissions through oral testimony from an authorized

witness. *Id.*; see *In re Bonnie S.*, 2018 IL App (4th) 170227, ¶ 49 ("Cursory or conclusory testimony is not sufficient to satisfy the statutory requirements."). But, "if the State fails to file a complete written predisposition report and also fails to present testimony outlining a treatment plan and identifying timetables for the treatment goals set forth in the treatment plan, the involuntary commitment order must be reversed." *Amanda H.*, 2017 IL App (3d) 150164, ¶ 42.

¶ 42　　　　Here, the predisposition report clearly did not satisfy section 3-810. The stated "Patient goal" was simply, "Patient will be able to return to the community without representing a threat of harm to neither [*sic*] self and or others." More importantly, the report provided no information on a timeline for attainment of this general goal.

¶ 43　　　　Respondent argues that his attorney objected to the report at trial, and we should therefore not consider Dr. Sanchez's testimony in evaluating the report. However, respondent's attorney did not object to the report when the State moved to admit it into evidence. Instead, respondent's attorney simply argued during closing argument that the report was insufficient. Indeed, the report was admitted into evidence without objection. Respondent cites no authority showing that closing argument is a sufficient "objection" to require strict compliance with section 3-810. In *In re E.L.*, 316 Ill. App. 3d 598, 603, 607 (2000), the appellate court concluded that the State could not remedy its failure to file a written report with oral testimony because the respondent's attorney "repeatedly objected to the absence of a written report." Respondent's counsel here did not do the same.

¶ 44　　　　Regardless, we need not decide whether defense counsel's closing argument was sufficient to foreclose reliance on Dr. Sanchez's testimony here. Dr. Sanchez's only comment related to any timeline was his statement, "I would respectfully recommend, number one, that this patient be court-ordered to the facility for a period not to exceed 90 days." Dr. Sanchez did not

even testify that it could take the full 90 days to achieve or make progress toward the stated treatment goal. Instead, his request for an order "for a period not to exceed 90 days" gave the trial court no guidance in determining how long respondent should be forcibly admitted to a hospital against his will. Dr. Sanchez "simply asked for an order for the maximum duration allowed under the Code." *Anne W.*, 2025 IL App (4th) 241257, ¶ 26; see 405 ILCS 5/3-813(a) (West 2024). Even with this testimony, the State failed to provide a timeline for its goals.

¶ 45        The State responds that Dr. Sanchez's general request for admission for up to 90 days was sufficient because "[p]sychiatric care is an inexact science." According to the State, without patient cooperation, Dr. Sanchez could not possibly be more precise.

¶ 46        We are not persuaded. The State asks us to ignore not only section 3-810's clear requirement that the predisposition report provide a "projected timetable," but also the multiple cases reversing when the State failed to do so. 405 ILCS 5/3-810 (West 2024); see *Anne W.*, 2025 IL App (4th) 241257, ¶¶ 26-27; see also *Amanda H.*, 2017 IL App (3d) 150164, ¶ 45; *In re Daniel M.*, 387 Ill. App. 3d 418, 423 (2008). The State's argument would eliminate any requirement for a projected timetable, asking us to approve any request for the longest allowable involuntary commitment without explanation. We decline to disregard the Code and Illinois court precedent.

¶ 47        Because the State failed to provide a timeline for treatment goals, it failed to provide a sufficient report under section 3-810. This constitutes reversible error. See *Amanda H.*, 2017 IL App (3d) 150164, ¶ 42. Because we find this clear basis to reverse the involuntary admission order, we do not address respondent's remaining argument challenging that order.

¶ 48                              D. Involuntary Medication

¶ 49        Our reversal of the trial court's involuntary commitment order requires reversal of

the involuntary medication order as well. See *Marcus S.*, 2022 IL App (3d) 160710, ¶ 21 ("Because we reverse the trial court's involuntary commitment order, we must also reverse the involuntary medication order, which was contingent upon [respondent] receiving inpatient care pursuant to the commitment order."). Nevertheless, we agree with respondent that multiple violations of the Code occurred during the involuntary medication proceedings, and we choose to address some of respondent's arguments regarding these Code violations. See *id.* ¶ 22 ("Because these types of flagrant failures, utter disregard of the Code's requirements, and dereliction of duty both by trial courts and counsel for both parties recur with disturbing regularity, we choose to address the involuntary medication order as well.").

¶ 50       Section 2-107.1 of the Code (405 ILCS 5/2-107.1 (West 2024)) sets standards for ordering involuntary medication. Whether the Code was complied with presents a question of law, which we review *de novo*. *Marcus S.*, 2022 IL App (3d) 160710, ¶ 27. Here, we find two separate violations of the Code, each warranting reversal.

¶ 51       First, we find that respondent and his attorney did not receive adequate notice of the petition for involuntary medication and the hearing. Section 2-107.1(a-5)(1) of the Code states:

> "The petitioner shall deliver a copy of the petition, and notice of the time and place of the hearing, to the respondent, his or her attorney, any known agent or attorney-in-fact, if any, and the guardian, if any, no later than 3 days prior to the date of the hearing." 405 ILCS 5/2-107.1(a-5)(1) (West 2024).

Our supreme court has determined failure to provide proper service of the petition was not reversible error, provided that "the respondent had actual knowledge of the proceedings and that he and his attorney were 'afforded *** the time to prepare for the proceeding and allowed *** an opportunity to be heard on the disposition of the matter.' " *In re C.E.*, 161 Ill. 2d 200, 226 (1994)

- 15 -

(quoting *In re Splett*, 143 Ill. 2d 225, 232 (1991)); see *Robinson*, 287 Ill. App. 3d at 1088. In *B.K.*, the respondent and her attorney did not receive the petition and notice of the hearing until the day of the hearing. *B.K.*, 362 Ill. App. 3d at 328-30. Counsel failed to object, but we found counsel had no opportunity to prepare a defense, and the error was so serious that it affected the fundamental fairness of the proceedings, requiring reversal. *Id.* at 329-30.

¶ 52　　　　Here, there is no record of respondent and his attorney receiving the petition for involuntary medication or a notice of hearing, except for counsel's statement at the beginning of the hearing that he had seen the petition. Although the petition for involuntary admission included a statement that respondent received a copy, the petition for involuntary medication contained no such statement. Moreover, even if we assume that the court's scheduling order setting the "Petition" for hearing on June 2, 2025, applied to both petitions, the trial court scheduled the hearing and appointed respondent's counsel on the same day as the hearing. Based on this record, we find respondent and his attorney did not receive the required three days' notice. We certainly cannot say respondent and his attorney had time to prepare when the hearing took place at 11 a.m. on the morning they were notified and counsel was appointed, particularly where there was another obvious violation of the Code to which respondent's counsel raised no objection.

¶ 53　　　　Indeed, as a separate basis for reversal, we find the trial court improperly held only a single hearing on both petitions. Section 2-107.1(a-5)(2) of the Code states that a hearing on a petition for administration of psychotropic medicine "shall be separate from a judicial proceeding held to determine whether a person is subject to involuntary admission but may be heard immediately preceding or following such a judicial proceeding and may be heard by the same trier of fact or law as in that judicial proceeding." 405 ILCS 5/2-107.1(a-5)(2) (West 2024); see *In re Barbara H.*, 183 Ill. 2d 482, 498 (1998) ("The joint hearing was in direct violation of section 2-

- 16 -

107.1(a)(2) of the Mental Health Code."); see also *In re Miller*, 301 Ill. App. 3d 1060, 1070 (1998) (holding that a trial court cannot "attempt to conduct 'separate hearings' during the same hearing and enter separate findings on each petition").

¶ 54 Here, the State contends that the trial court held two separate hearings because Dr. Sanchez testified twice. We disagree. Although the trial court separated Dr. Sanchez's testimony regarding the petition for involuntary medication from his testimony regarding the petition for involuntary admission, the court also heard his testimony on both petitions before hearing arguments on both petitions simultaneously. It also ruled on both petitions only after hearing the evidence and arguments related to both petitions. Moreover, respondent left the hearing room during Dr. Sanchez's testimony on the petition for involuntary admission. If there had been a separate hearing on the petition for involuntary medication, we would expect some acknowledgement from the court that respondent was not present for that hearing. Instead, the court's order for involuntary medication stated that respondent was present but left before the hearing ended. This is true only if the court heard both petitions in one hearing.

¶ 55 We acknowledge that the Code allows the trial court to conduct the hearings successively. See 405 ILCS 5/2-107.1(a-5)(2) (West 2024). However, this provision does not allow joint hearings. Indeed, by holding only a single hearing on both petitions, the trial court committed reversible error. See *In re Alaka W.*, 379 Ill. App. 3d 251, 274-75 (2008) (finding reversible error where the trial court failed to strictly comply with section 107.1(a-5)(2) and held a single hearing on a petition for involuntary admission and a petition for involuntary administration of psychotropic medication, despite respondent's failure to object); see also *In re Daniel A.*, 2023 IL App (2d) 210029, ¶ 24 (holding "the statute requiring separate hearings requires strict compliance and that it was reversible error to allow intermingled testimony on both

petitions, essentially combining the hearings for involuntary commitment and involuntary medication").

¶ 56 Because we find two violations of the Code that each warrant reversal, in addition to our reversal of the involuntary admission order, we decline to address respondent's remaining claims.

¶ 57 III. CONCLUSION

¶ 58 For the reasons stated, we reverse the trial court's orders.

¶ 59 Reversed.